**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| SHANNON O'NEILL, <br><br> Plaintiff, <br><br> v. <br><br> EMAGIN CORPORATION, ERIC BRADDOM, PAUL CRONSON, ELLEN RICHSTONE, ANDREW G. SCULLEY, STEPHEN M. SEAY, and JILL J. WITTELS, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Shannon O'Neill ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against eMagin Corporation ("eMagin" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Samsung Display Co., Ltd. ("Samsung").[1]

2. On June 14, 2023, eMagin entered into an Agreement and Plan of Merger (the "Merger Agreement") with Samsung, Samsung's wholly owned subsidiary Emerald

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Intermediate, Inc. ("Silk USA") and Silk USA's wholly owned subsidiary Emerald Merger Sub, Inc. ("Merger Sub"). The Merger Agreement provides that eMagin stockholders will receive $2.08 in cash per share of Company common stock in connection with the Proposed Transaction.

3. The Company's corporate directors subsequently authorized the July 20, 2023, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of

---

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for August 31, 2023.

Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of eMagin common stock.

10. Defendant eMagin is a Delaware corporation with its principal executive offices located at 700 South Drive, Suite 201, Hopewell Junction, New York 12533.  eMagin's shares trade on the NYSE American under the ticker symbol "EMAN."  eMagin designs, develops, manufactures and markets organic light emitting diode ("OLED") miniature displays, which eMagin refers to as OLED-on-silicon microdisplays, virtual imaging products that utilize OLED microdisplays, and related products.  eMagin also performs research in the OLED field. The Company is one of the leading U.S. producers of OLED microdisplays and manufactures its products at its facility located in the Hudson Valley of New York State.  The Company's virtual imaging products integrate OLED technology with silicon chips to produce high-resolution microdisplays which, when viewed through a magnifying headset, create virtual images that appear comparable in size to that of a computer monitor or a large-screen television.

3

eMagin's products enable its original equipment manufacturer ("OEM") customers in the military, consumer and commercial markets to develop and market improved or new electronic products. The Company considers itself a leader in display brightness and resolution due to its proprietary Direct Patterning Technology ("dPd"). Unlike traditional OLED microdisplays that produce colors by using a white source with filters that eliminate about 80% of the emitted light, with dPd the Company makes full color displays by directly depositing each of the primary color materials on respective sub-pixels, without the use of filters.

11. Defendant Eric Braddom is and has been a director of the Company at all times relevant hereto.

12. Defendant Paul Cronson is and has been a director of the Company at all times relevant hereto.

13. Defendant Ellen Richstone is and has been a director of the Company at all times relevant hereto.

14. Defendant Andrew G. Sculley is and has been Chief Executive Officer and a director of the Company at all times relevant hereto.

15. Defendant Stephen M. Seay is and has been a director of the Company at all times relevant hereto.

16. Defendant Jill J. Wittels has been Chair of the Board and a director of the Company at all times relevant hereto.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

18. On May 17, 2023, the Company announced in relevant part:

HOPEWELL JUNCTION, N.Y., May 17, 2023 (GLOBE NEWSWIRE) -- eMagin Corporation (NYSE American: EMAN) ("eMagin" or the "Company"), a U.S.-based leader in the development, design, and manufacture of Active-Matrix OLED microdisplays for high-resolution, AR/VR and other near-eye imaging products, today announced that the Company has entered into a definitive merger agreement with Samsung Display Co., Ltd. ("Samsung Display"), a subsidiary of Samsung Electronics Co., Ltd. (KRX: 005930) and manufacturer and distributor of display products. Under the terms of the agreement, all outstanding shares of eMagin common stock on a fully diluted basis will be acquired for $2.08 per share in cash, in a transaction valued at approximately $218 million.

The purchase price represents a premium of approximately 10% to eMagin's closing stock price of $1.89 on May 16, 2023, and a premium of approximately 24% to eMagin's six-month volume-weighted average price of $1.68.

"This agreement is a validation of our technical achievements to date including our proprietary direct patterning (dPd) technology, provides a significant premium for our shareholders, and represents a win for our customers and employees," said Andrew G. Sculley, eMagin's Chief Executive Officer. "By teaming with Samsung Display, we will be able to achieve the full potential of our next-generation microdisplay technology with a partner that can provide the resources and expertise we will need to scale production. Moreover, our customers will benefit from resulting improvements to our production capabilities in terms of yield, efficiency, and quality control."

President & Chief Executive Officer of Samsung Display, Joo Sun Choi, emphasized the strategic significance of the acquisition, stating, "We expect XR (Extended Reality) devices to have significant potential of growth in the future, and eMagin's technology in this space will enable Samsung to offer innovative products to more customers and strengthen its XR-related business."

Following the closing of the transaction, eMagin will continue to maintain its operations and facilities in Hopewell Junction, NY.

**Approvals and Timing**

eMagin's Board of Directors has unanimously approved the transaction and is recommending that eMagin's stockholders approve the transaction and adopt the

merger agreement at a special meeting of stockholders to be called in connection with the transaction. Certain of eMagin's stockholders who collectively hold approximately 98% of the total voting power of eMagin's Series B Convertible Preferred Stock, which is convertible into approximately 21% of the total voting power of eMagin's common stock on a fully diluted basis, have entered into a support agreement pursuant to which they have committed to vote such shares in favor of the transaction.

The transaction is expected to close in the second half of 2023, subject to the approval by eMagin's stockholders, applicable regulatory approvals and other customary closing conditions. Until closing, eMagin and Samsung Display remain separate and independent companies.

**Advisors**

Nomura Securities International, Inc. is serving as exclusive financial advisor to eMagin. White & Case LLP and Goodwin Procter LLP are acting as the Company's legal counsel. Evercore Inc. is serving as exclusive financial advisor to Samsung Display and O'Melveny & Myers LLP is acting as legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

19. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on July 20, 2023  The Proxy Statement, which recommends that eMagin stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts; (b) the financial analyses underlying the fairness opinion provided by the Company's financial advisor, Nomura Securities International, Inc. ("Nomura"); and (c) potential conflicts of interest faced by Nomura and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for eMagin*

20. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including those used by Nomura in connection with its financial

analysis.[3] Specifically, the Proxy Statement fails to disclose: (a) when the Board approved the Base Case Forecast for Nomura's use in connection with rendering its fairness opinion; and (b) whether any revisions were made to the Base Case Forecast between November 7, 2022 and May 16, 2023, the date the Board approved the Merger Agreement and Nomura rendered its fairness opinion, and if so, a summary thereof.

21. The Proxy Statement further fails to disclose the line items underlying both Adjusted EBITDA and Unlevered Free Cash Flow (Burdened by Stock Based Compensation) with respect to the "Base Case Forecast" and "Illustrative Upside Case Forecast" previously described herein.

22. The Proxy Statement also fails to disclose the projected segment revenue for each of the Company's dPd and WOLED+CF technologies with respect to the "Mass Manufacturing Contribution Analysis" forecast previously described herein.

*Material Misrepresentations and/or Omissions Concerning Nomura's Financial Analyses*

23. The Proxy Statement fails to disclose material information concerning Nomura's financial analyses.

24. With respect to both the *Discounted Cash Flow Analysis – Base Case* and the

---

[3] Company management spoke with Nomura on November 7, 2022, regarding the financial information that management had prepared. Proxy Statement at 38. During that meeting, the parties to the call discussed: (a) a "base case" forecast ("Base Case Forecast"), (b) an illustrative case forecast assuming additional revenues and profits in the future from licensing the Company's dPd and WOLED+CF technology (the "Illustrative Upside Case Forecast") and (c) an analysis, from the perspective of a potential acquirer or strategic manufacturing partner, of the Company's technologies (the "Mass Manufacturing Contribution Analysis"). *Id.* Subsequently, on November 18, 2022, the Board approved the Base Case Forecast, Illustrative Upside Case Forecast, and Mass Manufacturing Contribution Analysis "and directed Nomura to use the Base Case Forecast for the preparation of its preliminary financial analyses." *Id*. at 39.

*Discounted Cash Flow Analysis – Illustrative Case* performed by Nomura, the Proxy Statement fails to disclose the Company's terminal values.

25. With respect to the *Analysis of Implied Premia* performed by Nomura, the Proxy Statement fails to disclose both the identities of the transactions observed and the respective premium observed for each.

### *Material Misrepresentations and/or Omissions Concerning Nomura's and Company Insiders' Potential Conflicts of Interest*

26. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Nomura, including the details of any services Nomura provided to Stillwater Holdings LLC, MDAS 2012 Children's Trust and Ginola Limited (collectively, the "Supporting Stockholders"), or their respective affiliates, in the two-year period preceding its fairness opinion on the Proposed Transaction, and any related compensation received by Nomura.

27. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any members of Company management have secured, or are expected to secure, positions with the post-close company.

28. The omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of Nomura," "Background of the Merger," and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

29. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently

informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and eMagin**

30.　Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

31.　The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  eMagin is liable as the issuer of these statements.

32.　The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

33.　The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34.　The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

35. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of eMagin within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of eMagin and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

42. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction,

rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

    D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E.  Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 10, 2023          **LONG LAW, LLC**

                By: */s/ Brian D. Long*
                  Brian D. Long (#4347)
                  3828 Kennett Pike, Suite 208
                  Wilmington, DE 19807
                  Telephone: (302) 729-9100
                  Email: BDLong@LongLawDE.com

                  *Attorneys for Plaintiff*